# In the United States Court of Federal Claims

SCIENCE AND TECHNOLOGY CORPORATION,

    *Plaintiff,*

v.

THE UNITED STATES,

    *Defendant,*

and

ANALYTICAL MECHANICS ASSOCIATES, INC.

    *Defendant-Intervenor.*

No. 24-1394
(Filed: February 20, 2025)[1]

*Robert J. Symon*, Bradley Arant Boult Cummings LLP, Washington, D.C., for Plaintiff.

*Kelly Elizabeth Phipps*, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

*Francis Eugene Purcell, Jr.*, Thompson Hine LLP, Washington, D.C., for Intervenor.

**ORDER DENYING MOTION FOR INJUNCTION AND STAY PENDING APPEAL**

**LERNER,** *Judge*.

    On December 19, 2024, the Court granted judgment for Defendant and Defendant-Intervenor in a post-award bid protest that preceded the instant motion. Op. and Order, ECF No. 35; *see also Sci. & Tech. Corp. v. United States*, No. 24-1394, 2025 WL 28352, at *17 (Fed. Cl. Jan. 3, 2025). In that bid protest, Plaintiff, Science and Technology Corporation ("STC"), challenged the decision of the National Aeronautics and Space Administration's Ames Research Center ("NASA Ames") to award a contract for engineering support services for spaceflight and aircraft systems to Defendant-Intervenor, Analytical Mechanics Associates, Inc. ("AMA").

---

[1]     This Order was filed under seal on January 28, 2025, and the parties were afforded time to propose redactions. Order denying Motion to Stay, ECF No. 48. Neither party proposed redactions. Accordingly, the Court reissues this Order as it was originally published.

Shortly thereafter, STC filed a Notice of Appeal on December 23, 2024. Notice of Appeal, ECF No. 37. Twenty-one days later, Plaintiff filed the instant Motion for a Stay and Injunction Pending Appeal pursuant to Rule 62(d) of the Rules of the Court of Federal Claims ("RCFC"). Mot. to Stay Ct.'s Op. and Order (hereinafter "Mot."), ECF No. 40. In its Motion, STC argues that the United States Court of Appeals for the Federal Circuit is likely to find in its favor principally because NASA Ames acted unreasonably when it decided not to hold discussions in its Federal Acquisition Regulation ("FAR") Part 15 procurement. Plaintiff postures that the Court should issue an injunction pending appeal and stay its judgment to prevent the irreparable harm STC will suffer if NASA Ames and AMA are allowed to begin performance of the disputed contract. Plaintiff has not moved for expedited consideration at the appeals court. The motion is fully briefed. The Court deems oral argument unnecessary, particularly given Plaintiff's request for expedited consideration. *See* Mot. to Expedite Briefing Schedule, ECF No. 41.

STC requests extraordinary relief and bears the burden to establish that such relief is warranted. Because Plaintiff has not shown a likelihood of success on the merits or that the hardships balance in its favor, it is not entitled to either an injunction prohibiting contract performance pending appeal or a stay of the Court's judgment. Accordingly, as explained below, Plaintiff's Motion for Stay and Injunction Pending Appeal is **DENIED**.

**I.    Background and Procedural History**

The facts of this case are recounted in detail in the Court's opinion on the merits. *Sci. & Tech. Corp.*, 2025 WL 28352, at *1–9. However, for context, the following is a summary of the procedural and factual history of this protest.

On March 16, 2023, the NASA Ames research center in California issued a request for proposal ("RFP" or "Solicitation") that sought a small business contractor to provide engineering support services for its spaceflight systems and to develop aircraft technologies. *Id.* at *1. Called the ASSESS contract, the award was a composite of two previous awards, the Aeronautics and Exploration Mission Modeling and Simulation ("AEMMS") contract and the Entry Systems Research and Technology Development ("ESTRAD") contract, which were held by STC and AMA, respectively. *Id.*; *see also* Tab 11 at AR 425.

NASA anticipated that to ensure uninterrupted coverage from STC and AMA while they selected an awardee for the ASSESS contract, it would need to implement bridge contracts for both the AEMMS and ESTRAD awards. Accordingly, NASA executed a twenty-eight-month extension of STC's AEMMS award that cost $33.3 million and a twenty-two-month extension of AMA's ESTRAD award that cost $32.2 million. *Id.* at 422. Each extension covered the program through September 2024. *Id.*

The RFP explained that NASA Ames planned to consider three factors in its award: Mission Suitability, Past Performance, and Cost/Price. *Sci. & Tech. Corp.*, 2025 WL 28352, at *2. "The Cost factor [was] significantly less important than the combined importance of the Mission Suitability factor and Past Performance factor." Tab 11 at AR 426. *See also* Tab 19 at AR 1479; Tab 33 at AR 2575–76; *Sci. & Tech. Corp.*, 2025 WL 28352, at *2, *16. The RFP specifically stated that NASA Ames did not intend to hold discussions. Tab 19 at AR 1468 ("The Government intends to evaluate proposals and award a contract without discussions with offerors.").

Two incumbent offerors—STC and AMA—submitted proposals in response to the Solicitation. *Sci. & Tech. Corp.*, 2025 WL 28352, at \*4. The Source Evaluation Board ("SEB") and the Source Selection Authority ("SSA") evaluated the offerors and made the ultimate award decision. *Id.* at \*1, \*4–8 (explaining the role of the SEB and SSA in this procurement). While the SEB upwardly adjusted both Plaintiff's and Defendant-Intervenor's forecasted costs, the SEB increased STC's costs more because Plaintiff did not provide sufficient documentation to support its estimates. *Id.* at \*6, \*10–12. NASA Ames awarded the ASSESS contract to Defendant-Intervenor. *Id.* at \*8. In response, Plaintiff chose to bring a protest of the award at the Government Accountability Office ("GAO"). *Id.* at \*9. GAO found that NASA Ames did not err by declining to hold discussions with either offeror. Tab 51 at AR 4845. Nor did Defendant unreasonably adjust STC's proposed costs. *Id.* at AR 4843–44. Unsatisfied with the GAO's findings, STC filed a Complaint in this Court. Compl., ECF No. 1.

During the pendency of this litigation, Plaintiff and Defendant-Intervenor continue to provide services to NASA under two separate non-competitive bridge contracts that end on March 31, 2025. Mot. at 8; Def.'s Resp. To Mot. to Stay Ct.'s Op. and Order (hereinafter "Def.'s Resp."), ECF No. 43 at 2 (explaining that NASA has operated under these bridge contracts for five months). The bridge contracts have four one-month options to extend through July 31, 2025. Bloom Decl., ECF No. 40-1 at 2. NASA intends to begin transitioning to the ASSESS contract on or about Monday, January 27, 2025. Def.'s Resp. at 2; Mot. at 1 n.1. Plaintiff filed its Motion for Stay and Injunction Pending Appeal along with a Motion for Expedited Briefing on January 13, 2025, twenty-one days after it filed its appeal with the Federal Circuit and ten days after Defendant informed STC it would not voluntarily stay performance of the ASSESS contract. Mot. at 1 n.1; Mot. to Expedite Briefing at 1.

### A.   Legal Standards

STC seeks both a stay of the Court's judgment and an injunction pending appeal. Mot. at 1. Rule 62(d) of the Rules of the United States Court of Federal Claims ("RCFC") provides that while an appeal of a final judgment that refuses an injunction is pending, "the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." RCFC 62(d); *see also G4S Secure Integration LLC v. United States*, 159 Fed. Cl. 249, 254 (2022); *ACI Techs., Inc. v. United States*, 162 Fed. Cl. 39, 43 (2022). It is well established that "once final judgment is entered and a timely notice of appeal has been filed, the trial court loses jurisdiction over the case except to act in aid of the appeal or to correct clerical errors." *JWK Int'l Corp. v. United States*, 49 Fed. Cl. 364, 366 (2001), *aff'd,* 279 F.3d 985 (Fed. Cir. 2002). This Court retains jurisdiction to grant an injunction pending an appeal. *See, e.g.*, *id.* at 366 n.3 (explaining that RCFC 62 mirrors Rule 62 of the Federal Rules of Civil Procedure and has similar effect to that rule).

An injunction pending appeal is an "extraordinary and drastic remedy." *G4S Secure Integration*, 159 Fed. Cl. at 255 (quoting *Telos Corp. v. United States*, 129 Fed. Cl. 573, 575 (2016)) (internal quotations omitted); *see also RLB Contracting, Inc. v. United States*, 120 Fed. Cl. 681, 682 (2015) ("An injunction pending appeal is an extraordinary remedy and will not be lightly granted."). Such an exceptional remedy "may only be awarded upon a clear showing that the [moving party] is entitled to such relief." *Swift & Staley Inc. v. United States*, 159 Fed. Cl. 731, 733 (2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)); *see also ACI Techs.*, 162 Fed. Cl. at 43.

Guided by the particular circumstances of the case, the Court has discretion to decide whether such an atypical remedy is appropriate. *Newimar, S.A. v. United States*, 163 Fed. Cl. 240, 246 (2022). A moving plaintiff bears the burden of proving that an injunction pending appeal is appropriate. *Beard v. United* States, 451 F. App'x 920, 921 (Fed. Cir. 2011); *G4S Secure Integration*, 159 Fed. Cl. at 254. And this burden is steep. *Newimar*, 163 Fed. Cl. at 253 (quoting *Obsidian Sols. Grp., LLC v. United States*, No. 20-1620C, 2021 WL 1688892, at *4 (Fed. Cl. Apr. 27, 2021)). A movant must show that its alleged injuries are "both certain and great," and that its hardship will have an "immediate and substantial impact." *Id.* (quoting *ACI Techs.*, 162 Fed. Cl. at 48).

To determine whether it should take the extraordinary step of staying performance pending an appeal, a court must consider four factors:

> (1) a likelihood that plaintiff will prevail on the merits of the appeal; (2) a demonstration that plaintiff will suffer irreparable injury unless the stay is granted; (3) a showing that the stay would not pose substantial harm to other interested parties if granted; and (4) a showing that no harm will be inflicted upon the public interest.

*JWK Int'l Corp.*, 49 Fed. Cl. at 366 (citation omitted); *see also Standard Havens Prods. v. Gencor Indus.*, 897 F.2d 511, 512 (Fed. Cir. 1990); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *FMC Corp. v. United States*, 3 F.3d 424, 427 (Fed. Cir. 1993); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum Co.*, 835 F.2d 277, 278 (Fed. Cir. 1987) (holding that courts should "assess [a] movant's chances for success on appeal and weigh the equities as they affect the parties and the public" when evaluating whether to grant a stay pending appeal).

This formula cannot be reduced to a set of rigid rules. *Hilton*, 481 U.S. at 777. Each factor need not be given equal weight. *Standard Havens*, 897 F.2d at 512–13 (quotation omitted). Instead, courts should evaluate a movant's request for a stay or injunction pending appeal using a "sliding scale approach." *Id. See also Alt. Carbon Res., LLC v. United States*, 138 Fed. Cl. 548, 556 (2018) (describing a "flexible approach"). The first two factors are generally the most important in a court's inquiry. *Newimar*, 163 Fed. Cl. at 246. And under this flexible approach, if the harm to a plaintiff is great enough, courts should not require "a strong showing" that a moving plaintiff is "likely to succeed on the merits." *Standard Havens*, 897 F.2d at 513.

Courts sometimes grant a movant's request for an injunction pending appeal if it can show that it has a "'substantial case on the merits'" and the other factors in the analysis tilt decidedly in its favor. *Swift*, 159 Fed. Cl. at 734 (quoting *Hilton*, 481 U.S. at 778); *ACI Techs.*, 162 Fed. Cl. at 44. "If the harm factors weigh heavily in [the moving plaintiff's] favor, plaintiff only needs to demonstrate a substantial case on the merits." *JWK Int'l Corp.*, 49 Fed. Cl. at 366; *Standard Havens*, 897 F.2d at 513 (quoting *Hilton*, 481 U.S. at 766) ("When harm to applicant is great enough, a court will not require a 'strong showing' that applicant is 'likely to succeed on the merits.'"). So "[i]n lieu of demonstrating a strong likelihood of success on the merits under factor 1, the movant may instead demonstrate a 'substantial case' of success on the merits '*provided* the other factors militate in the movant's favor.'" *Newimar*, 163 Fed. Cl. at 247 (quoting *Standard Havens*, 897 F.2d at 513).

At minimum, a plaintiff may have a substantial case on the merits if the question raised is "novel or close," and the case has a "better than negligible chance" of success on appeal. *Id.* (citations omitted). This lesser showing is "no free ride" and plaintiff must prove that the questions raised are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation." *ACI Techs.*, 162 Fed. Cl. at 44 (citation omitted). An issue of first impression can constitute a "substantial case on the merits." *Akima Intra-Data, LLC v. United States*, 120 Fed. Cl. 25, 28 (2015) (citing *Jacobson v. Lee*, 1 F.3d 1251 (Fed. Cir. 1993)). An issue may also constitute a substantial case on the merits if the question raised is novel or close, and thus fair grounds for litigation. *G4S Secure Integration*, 159 Fed. Cl at 261. Accordingly, an injunction or a stay pending appeal may be appropriate even if the moving party has not shown that it is likely to succeed on the merits. *Id.* at 255.

## II.  Discussion

As explained below, STC is not entitled to such extraordinary relief. It has demonstrated neither a likelihood for success on appeal nor a substantial case on the merits. Nor did Plaintiff show that the harms it will suffer as a disappointed incumbent bidder outweigh the harms Defendant and Defendant-Intervenor allege they will suffer.

### A.  Plaintiff is Unlikely to Succeed on the Merits on Appeal and Lacks a Substantial Case.

To reiterate, the first factor the Court must consider is whether STC, as the moving party, has made a strong showing that it is likely to win on the merits. STC believes it will succeed in its appeal principally because of a key issue in the case: whether NASA Ames should have conducted discussions. Mot. at 4–7; *Sci. & Tech. Corp.*, 2025 WL 28352, at *10 (citing Pl.'s Reply to Cross. Def.'s and Def.-Intervenor's Mots. for J. on Administrative Record (hereinafter "Pl.'s Reply to MJARs"), ECF No. 28 at 1). Plaintiff disagrees with the Court's Opinion and alleges that it was "legally erroneous" because NASA Ames' decision not to enter discussions was "unreasonable and constituted arbitrary and capricious agency action." Mot. at 4. STC asserts it is a "simple fact" that "discussions would have resolved the [SEB] Price Analyst's doubts and resulted with downward adjustments and significant cost savings to the Government—a premise to the procurement." Mot. at 6. Plaintiff avers that Defendant had plenty of time to conduct these discussions. *See* Mot. at 4, 6–7 (criticizing "the Agency's decision to forgo discussions for several months with only two offerors"). STC does not explain the relevancy of how long it took Defendant to select an awardee. *See id.*

To support its contention that the Court erred, STC relies on three cases that are not directly applicable or analogous to this case. *Id.* at 5–6. Two of those cases were discussed in detail in this Court's Opinion. *Sci. & Tech. Corp.*, 2025 WL 28352, at *13. First, Plaintiff cites a per curiam Federal Circuit case, *Essex Electro Eng'rs, Inc. v. United States*. 458 F.App'x 903, 903 (Fed. Cir. 2011). In *Essex*, the Federal Circuit wrote that: "When a solicitation states that formal discussions are not required, there may be some circumstances in which the government's failure to hold discussions would be arbitrary and capricious." *Id.*; *see also Sci. & Tech. Corp.*, 2025 WL 28352, at *13. In this short two paragraph order, the Federal Circuit did not address when discussions were required; it merely stated that they were not required in the case before it. *Essex Electro*, 458 F. App'x at 903.

5

Further exploration into the underlying case in *Essex* clarifies that the Federal Circuit is unlikely to rule in STC's favor on appeal. Before the United States Court of Federal Claims, Essex argued that the agency in that case, the United States Navy, was obligated to hold discussions because the solicitation stated that the Navy "may" make an award decision without holding discussions. Transcript of Oral Argument at 38, *Essex Electro Eng'rs, Inc. v. United States*, No. 10-379 (Fed. Cl. Oct. 6, 2010). Essex averred that to lawfully not hold discussions, the Navy needed to write in the solicitation that it "intended" to make award without discussions. *Id.* The Court found that the Navy was not obligated to conduct discussions despite the use of "may" in the solicitation. *Id.* at 40–41. Given that plaintiff was warned that the Navy could make an award decision without holding discussions and that the Navy permissibly found substantial differences in quality between the two proposals that were submitted, the Court ruled that the "price difference" between the two proposals "becomes irrelevant." *Id.* at 43. It found that an agency could ignore a forty-four percent price differential (which worked out to $7,060,000) "when confronted with a proposal that is not compliant." *Id.* at 5, 43.

So, despite STC's arguments, together the *Essex* cases counsel that the Federal Circuit is unlikely to find that NASA Ames acted irrationally by deciding not to hold discussions in this bid protest. The Solicitation for the ASSESS award clearly stated that "[t]he Government intends to evaluate proposals and award a contract without discussions with offerors." Tab 19 at AR 1468. As the Court explained in its Opinion, NASA Ames permissibly found that STC's proposal was weaker under Mission Suitability, that STC did not fully comply with the Solicitation under Cost/Price, and that the price differential of five percent, or roughly $5,000,000, did not justify selecting STC's weaker offer. *Sci. & Tech. Corp.*, 2025 WL 28352, at *7, *16. *See also* Pl.'s Reply to MJARs. Even if, as STC contends, Defendant's upward adjustments of Plaintiff's forecasted Cost/Price figures were arbitrary and invalid and the Cost/Price differential should have been closer to $10 million, Mot. at 6; Pl.'s Reply to MJARs at 10, *Essex* suggests that such a cost differential would still be reasonable given that Cost/Price was the least important factor.

As this Court acknowledged in its Opinion, even when "a solicitation states that formal discussions are not required, there may be some circumstances in which the government's failure to hold discussions would be arbitrary and capricious." *Essex Electro*, 458 F. App'x at 903. Those circumstances are not present here. *See Sci. & Tech. Corp.*, 2025 WL 28352, at *8, *13.

Plaintiff next turns to *Day & Zimmerman* and *Ernst & Young* to support its claims. Mot. at 5–6. Even though this Court "is not bound by the decisions of other judges on the Court of Federal Claims," both cases are still informative here, in part because they undercut STC's arguments that discussions were required in this procurement. *Newimar*, 163 Fed. Cl. at 253 (quoting *Almanza v. United States*, 136 Fed. Cl. 290, 296 (2018)). And in both cases, the Court found that the specific facts at issue and "totality of the circumstances" dictated that discussion was warranted. *Rig Masters, Inc. v. United States*, 70 Fed. Cl. 413, 422 (2006) (citing *Day & Zimmerman, Servs., a Div. of Day & Zimmerman, Inc. v. United States*, 38 Fed. Cl. 591, 608 (1997)).

In *Day & Zimmerman*, the Court recognized that "peculiar circumstances may arise which warrant an *exception* to the general rule that courts should respect the acts of procuring officials when said officials exercise their discretionary functions." *Day & Zimmerman*, 38 Fed. Cl. at 604. There, the Court found that the United States Army abused its discretion when it

6

failed to hold discussions with the offerors. *Id.* at 608. Specifically, the Army erred because it neither sufficiently explained the adjustments made to Day and Zimmerman Services' proposal, *id.* at 605, nor revealed that it used an undisclosed criterion—the Army's own independent cost estimate—to evaluate the proposals, which could not be evaluated for accuracy. *Id.* at 607. *See also Rig Masters*, 70 Fed. Cl. at 422 (characterizing the error in *Day & Zimmerman* as "the agency's use of an undisclosed" and possibly inaccurate benchmark).

The *Ernst & Young* Court stated that when an agency provides proprietary nonpublic government information to one but not all offerors, the Government must conduct discussions. *Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 509, 515–17 (2018) (concerning a FAR Part 8 procurement); *see also G4S Secure Integration*, 159 Fed. Cl. at 260. In that case, the Court found numerous problems with the defendant's conduct that together necessitated discussions. *Ernst & Young*, 136 Fed. Cl. at 516–17. The agency used undisclosed information to evaluate the proposals, conducted a technical evaluation that separately violated FAR regulations, and failed to consider that three of the four offerors made identical mistaken assumptions, which should have suggested a problem with the Solicitation, the evaluation process, or both. *Id.*

This Court agrees that the discretion of an agency to determine whether to conduct discussions is not unfettered. *See Sci. & Tech. Corp.*, 2025 WL 28352, at *13*; *Essex Electro*, 458 F. App'x at 903. Agencies may need to engage in discussions when there are "irregularities in the administrative record or undisclosed evaluation criteria." *Sci. & Tech. Corp.*, 2025 WL 28352, at *13 (citing *Essex Electro*, 458 F. App'x at 903; *Day & Zimmerman Servs.*, 38 Fed. Cl. at 604; and *Rig Masters, Inc.*, 70 Fed. Cl. at 422).

But STC has not alleged that NASA Ames did either of those things here. Unlike in *Day & Zimmerman*, Plaintiff does not claim there were irregularities in the administrative record. Unlike in *Ernst & Young*, STC does not assert that NASA Ames gave proprietary information solely to AMA or used undisclosed evaluation criteria. Moreover, unlike STC, AMA did not make mistakes in its proposal. *Sci. & Tech. Corp.*, 2025 WL 28352, at *12. Instead, STC continues to maintain that its lower cost estimate means that the SSA should have selected it to receive the contract.

To support its assertion that particular circumstances exist here that required Defendant to hold discussions, Plaintiff relies on misstatements of facts that inaptly characterize NASA Ames' actions and the Administrative Record. Mot. at 5 ("The specific facts of this case distinguish it from those cases that recognize an agency's broad discretion to conduct discussions."). For instance, Plaintiff alleges that the SEB's analyses of STC's and AMA's proposals were undisclosed evaluation criteria that were analogous to the Army's actions in *Day & Zimmerman*. Pl.'s Reply at 4 ("[T]hese same circumstances occurred here—STC's proposal deviated from the previously undisclosed opinions of the price analyst of what was a 'likely' cost."). In other words, Plaintiff argues that *how* NASA Ames evaluated its proposal should have been disclosed to it, and Defendant's technical evaluation of STC's proposal was akin to using an undisclosed benchmark to evaluate its proposal.

Citing to its own Motion for Judgment on the Administrative Record, STC asserts that Defendant "received instruction" from the SEB's Price Analyst "to raise ten discussion questions to STC in order to verify the [Price] Analyst's unsupported opinions" and then "ignored the instructions of its Price Analyst and waited several months to make award to AMA." Mot. at 4

(citing Pl.'s Mot. for J. on Administrative R. at 17). This is not accurate. As discussed in the Opinion, the SEB listed "ten potential discussion questions for STC, which were largely based on the Company's failure to explain many of its forecasted costs." *Sci. & Tech. Corp.*, 2025 WL 28352, at *7 (citing Tab 24 at AR 2231–32). The Administrative Record does not say that the Price Analyst either instructed or mandated that these discussion questions be asked. *See* Tab 24 at AR 2231–32. Nor is it clear that the SEB's Price Analyst could mandate the SSA do anything. *See generally* Tab 6 (outlining the roles of the SEB and the SSA). Indeed, the questions in the SEB Evaluation Summary are labeled "Potential Discussion Questions." Tab 24 at AR 2231. "Preparation of 'discussion questions' do not, in and of themselves, require the agency to conduct discussions." *Day & Zimmerman*, 38 Fed. Cl. at 605.

Plaintiff claims that Defendant erred because it did not explain why it chose not to conduct discussions here even though the SEB compiled potential discussion questions for STC. Mot. at 6. But the SSA did explain that after completing its review of materials from the SEB, including the SEB's Evaluation Summary, "there was 'nothing to be gained by . . . conducting subsequent discussions, given there was sufficient data to make a reasoned source selection.'" *Sci. & Tech. Corp.*, 2025 WL 28352, at *8. And under FAR Part 15, when a solicitation states that an agency does not intend to conduct discussions, agencies are only explicitly required to explain why they *chose* to engage in discussions. FAR 15.306 (a)(3).

Further, STC states that "the Government knew its probable cost adjustments were based on nothing more than the Agency's Price Analysts' opinion that STC's provided costs were 'not likely.'" Mot. at 4 (citing Pl.'s MJAR at 9). This statement is misleading. The SSA, which ultimately made the final selection decision, knew that STC's and AMA's forecasted costs under the Cost/Price factor had been upwardly adjusted. *See Sci. & Tech. Corp.*, 2025 WL 28352, at *8. It based the contract award decision in part on the SEB's Evaluation Summary, which was prepared by the Price Analyst, as well as a March 27, 2024 meeting with the SEB. *See id. See generally* Tab 33 (noting that the SEB and the "Cost Analyst/Auditors" performed a cost price analysis, a probable cost assessment, and a price reasonableness analysis in accordance with FAR 15.4, and the SSA was briefed on the SEB's findings). As to the SEB's evaluation of the Cost/Price factor, the SSA "found that the SEB made logical and sound cost adjustments" and "observed that the SEB performed a comprehensive, thorough, and well-documented evaluation of proposals." *Id.* at AR 2576. These price adjustments were not unsupported erroneous assumptions as STC casts them. Instead, they stemmed from considered expert analysis and STC's failure to provide information that would allow the SEB to mathematically verify its proposed figures. *Sci. & Tech. Corp.*, 2025 WL 28352, at *11–12.

The burden to prove that these particular circumstances should require NASA Ames to conduct discussions rests squarely with Plaintiff. STC has not shown that the facts of this procurement required Defendant to hold discussions despite of unambiguous language in the RFP that the contract would be awarded without discussions. Plaintiff failed to follow the instructions in the Solicitation and provide important information for the evaluation of its proposal. *Id.*

The law does not support the notion that NASA Ames should have to hold discussions because STC submitted a weaker proposal than AMA. Instead, it supports the Court's holding that Defendant was not required to conduct discussions in this particular case. *Sci. & Tech. Corp.*, 2025 WL 28352, at *13–14. The Federal Circuit has held that in FAR Part 15

procurements, agencies have discretion over whether to conduct discussions. *JWK Int'l Corp. v. United States*, 279 F.3d 985, 988 (Fed. Cir. 2002) (quoting 48 C.F.R. §15.306(d)(3)). As it wrote:

> All aspects of the discussions, their subject, breadth, and extent, are within the purview of the contracting officer. Under the regulation, aside from areas of significant weakness or deficiency, the contracting officer need not discuss areas in which a proposal may merely be improved. Therefore, absent bad faith or an abuse of discretion, the contracting officer need not conduct discussions.

*Id.* (citation omitted) (finding that an agency's decision not to conduct discussions about cost was unobjectionable because cost was the least important evaluation factor under the RFP).

Moreover, even if the Court were to accept that the Federal Circuit could find that NASA Ames should have conducted discussions, STC has failed to establish that Defendant's decision constituted prejudicial error. "[N]on-prejudicial errors in a bid process do not automatically invalidate a procurement." *Labatt Food Servs., Inc. v. United States*, 577 F.3d 1375, 1380 (Fed. Cir. 2009). *See also Bannum, Inc. v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005) ("A bid protest proceeds in two steps. First, . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second, . . . if the trial court finds the government's conduct fails the [Administrative Procedure Act] review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by the conduct.").

To succeed in a bid protest, a plaintiff must show "a greater-than-insignificant chance" of prevailing absent agency error. *Am. Relocation Connections, LLC v. United States*, 789 F. App'x 221, 228 (Fed. Cir. 2019). "The correction of an error must yield a different result in order for that error to have been harmful and thus prejudice a substantial right of a party." *Id.* at 228 (quoting *Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 504 (Fed. Cir. 1995)). Prejudice is a question of fact that must be determined from the record evidence. *AccelGov, LLC v. United States*, 174 Fed. Cl. 212, 224 (2024).

STC speculates that "the simple fact remains that discussions would have resolved the Price Analyst's doubts and resulted with downward adjustments and significant cost savings to the Government." Mot. at 6. This is a leap in logic unsupported by the record. Even if the Agency conducted discussions with STC and AMA, NASA Ames was not required to accept that STC's justifications for its price estimates alleviated the Agency's concerns about Plaintiff's proposed costs. NASA could have still found that STC's proposed prices warranted upward probable cost adjustments. Further, if the government were required to conduct discussions with STC, they would also have to conduct discussions with AMA, which could have led to a more favorable price evaluation for AMA's proposal. *See* FAR 15.306(d)(1) ("Discussions are tailored to each offeror's proposal, and must be conducted by the contracting officer with each offeror within the competitive range.").

But even if STC were right that after discussions NASA Ames would have accepted its forecasted figures entirely, STC still cannot establish it would have received the award. *See, e.g., Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1563 (Fed. Cir. 1996). As noted by the SSA when it made its award decision, Mission Suitability was the most important factor in the procurement, and together Mission Suitability and Past Performance significantly outweighed

Cost/Price.  *Sci. & Tech. Corp.*, 2025 WL 28352, at *8 (citing Tab 33 at AR 2576). Defendant-Intervenor's proposal had "significantly more strengths than STC under both subfactors" and "the AMA proposal offered a substantial discernable advantage over the STC proposal." *Id.* STC only outperformed Defendant-Intervenor in the Cost/Price factor, and AMA outperformed Plaintiff in the Mission Suitability category. *Id.* at *4–8. So even if Defendant erred and should have conducted discussions with STC and those discussions led to NASA accepting STC's proposed price ($90,995,657, which was about $12 million less than AMA's upwardly adjusted proposed price), STC still cannot establish that it had a significant chance of winning the procurement given its lower Mission Suitability score. *See* Tab 25 at AR 2389.

### B.   Substantial Case on the Merits

Having found STC is unlikely to succeed on appeal, the Court now turns to Plaintiff's alternative theory: that it has a substantial case on the merits because "this case carries potential precedential value with respect to the amount of discretion which should be afforded [to] Agency's [sic] when deciding whether to conduct discussions." Mot. at 7 n.2. This argument is confined to footnote two in Plaintiff's Motion and three paragraphs in Plaintiff's Reply. *Id.*; Pl.'s Reply at 2–3.

"Plaintiff cannot present a strong or substantial case on the merits simply by expressing disagreement with this Court's reasoning below; it must instead explain why the Federal Circuit would also likely disagree with this Court's holding." *Newimar*, 163 Fed. Cl. at 251 (citing *Obsidian Sols. Grp.*, 2021 WL 1688892, at *4). But much of STC's Motion and Reply merely reiterates "its objections to the SSA's decision and the Court's denial of judgment on the administrative record in Plaintiff's favor." *ACI Techs.*, 162 Fed. Cl. at 47.

STC does not argue that this case is an issue of first impression. *See* Mot. at 7 n.2; Pl.'s Reply at 2–3. And while STC argues that this case has "potential precedential value," Mot. at 7 n.2, the Court's analysis above and its Opinion explain that this is not a close case about difficult issues of law appropriate for a stay or injunction pending appeal. The Federal Circuit's precedent is clear: absent bad faith or abuse of discretion, agencies do not have to hold discussions simply because doing so might improve an offeror's proposal. *JWK Int'l Corp.*, 279 F.3d at 988 (quoting 48 C.F.R. §15.306(d)(3)). This issue has decisively been addressed by the Federal Circuit. *Compare id. with* Pl.'s Reply at 2–3.

### C.   Irreparable Harm

The Court next considers the injuries STC claims it will suffer without a stay and an injunction pending appeal. A movant seeking an injunction must allege harms beyond those "'any incumbent would experience upon the loss of a successor contract,' as losing a contract, even an important contract, is a risk that every incumbent contractor faces." *Newimar*, 163 Fed. Cl. at 253–54 (quoting *CRAssociates, Inc. v. United States*, 103 Fed. Cl. 23, 26 (2012)). That is because "[n]o federal contractor has a right to maintain its incumbency in perpetuity, and the potential loss of the benefits of incumbency does not give plaintiff some sort of automatic right to a stay pending appeal." *ACI Techs.*, 162 Fed. Cl. at 51 (internal quotations and citations omitted).

The irreparable injury requirement "erects a very high bar for a movant." *Id.* (quoting *Air Transp. Ass'n of Am., Inc. v. Exp.-Imp. Bank of the United States*, 840 F. Supp. 2d 327, 334

10

(D.D.C. 2012)). An irreparable injury must be based on more than "conclusory and unsupported statements concerning alleged harm," and a movant must show that the balance of harms tilts decidedly in its favor. *Newimar*, 163 Fed. Cl. at 254 n.8. The moving plaintiff must demonstrate that its alleged hardships will have "an immediate and substantial impact" on its business. *Sys. Appl'n & Techs., Inc. v. United States*, 691 F.3d 1374, 1385 (Fed. Cir. 2012) (internal quotation marks and citation omitted).

STC alleges it will suffer irreparable harm absent a stay or an injunction pending appeal. Mot. at 8–9. First, it says the "vast majority, if not all" of the sixty-two full-time employees who worked on the AEMMS contract will lose their jobs, as Plaintiff "does not currently have other work on which to employ" them. *Id.* at 7–8. These employees, STC hypothesizes, will either move to higher paying jobs in Silicon Valley or, for the seven employees on H1B or TN Visas, be forced to return to their home country. *Id.* STC would lose "a cohesive, tightly knit, experienced cadre of subject matter experts that could not easily be reconstituted." Bloom Decl. at 3. STC supposes it believes these foreign nationals would not be hired by AMA. *Id.* Second, Plaintiff reports that it would lose more than $1,000,000 per month if it was deprived of the "entire scope of work on the AEMMS contract" if NASA moves forward with the ASSESS contract transition. *Id.* at 3. Defendant disputes this. Def.'s Resp. at 7 (stating that NASA believes that STC retains no more than 3.5% or $35,000 in monthly profit from the AEMMS award).

The harms articulated by STC are "not unusually distinctive or compelling" and "the loss of revenue and employees, are no different from the harms incumbent contractors regularly confront when they lose a contract." *G4S Secure Integration*, 159 Fed. Cl. at 263. As Defendant points out, it is unclear whether STC's loss of employees is a harm to the Corporation itself. Def.'s Resp. at 7. Even still, AMA may choose to hire some or all of STC's sixty-two employees. Indeed, in its proposal for the ASSESS award, Defendant-Intervenor stated that it "intends to retain 100% of qualified incumbent staff." *Id.* (quoting Tab 21b at AR 1633).

Plaintiff's predictions of economic harm are also unavailing. Economic injury could be irreparable harm, especially if it "threatens the survival of a movant's business." *Obsidian Sols. Grp.*, 2021 WL 1688892, at *4; *see also Swift*, 159 Fed. Cl. at 735. Here, STC does not allege that the loss of the AEMMS award would endanger its business. *See* Mot. at 8–9; Reply at 6. Transitioning to the ASSESS contract would only "deprive STC of its entire scope of work on the AEMMS contract." Bloom Decl. at 3. That is not enough to constitute an irreparable injury because it is a risk inherent in being an incumbent who loses a contract. Plaintiff also has financially benefited from its bid protest litigation for at least five months. *See Newimar*, 163 Fed. Cl. at 255 (considering whether an incumbent contractor benefited from the delay caused by protesting as part of the balancing of harms experienced by each party). Its injuries pale in comparison to its low chance of success and the harms an injunction would cause to Defendant, AMA, and the public interest.

Finally, the Court notes Plaintiff has not, as of yet, requested an expedited appeal from the Federal Circuit. *See* Ct. Docket, *Sci. & Tech. Corp. v. United States*, 25-1335 (Fed. Cir. 2025). Federal Circuit Rule 27(c) allows a party to move for expedited review. Fed. Cir. Rule 27(c). The Practice Notes to Federal Circuit Rule 27 state that such motions are appropriate "where the normal briefing and disposition schedule may adversely affect one of the parties, as in appeals involving preliminary or permanent injunctions or *government contract bid protests*"

11

and should be filed *immediately* after docketing. Fed. Cir. R. 27 Practice Notes (emphasis added). The Court may consider in its injury analysis that a movant who alleges harm based on delays inherent in resolving an appeal does not request expedited review before the Federal Circuit. *See, e.g.*, *Newimar*, 163 Fed. Cl. at 248–49 (discussing how a "Plaintiff's portrayal of imminent and irreparable harm absent a stay is further belied by its failure to pursue an expedited appeal before the Federal Circuit"). Plaintiff is aware it could request expedited consideration. *See* Pl.'s Reply at 7. Taken together, STC has not established that any harms it may experience outweigh those experienced by AMA or NASA Ames.

### D. Injury to Other Parties

"Injury to other parties weighs against injunctive relief when the defendant would be forced into a more expensive contract and the defendant-intervenor would suffer a delay in performing and profiting from its contract." *G4S Secure Integration*, 159 Fed. Cl. at 263. Both AMA and NASA Ames allege that they will experience significant harms if the Court prohibits them from proceeding with the transition to the ASSESS contract.

NASA Ames alleges it will suffer "in at least four distinct ways" if performance of the ASSESS award is further delayed. Def.'s Resp. at 8. It would be enjoined from working with AMA, the contractor it assessed was the best company to perform the ASSESS award. *Id.* Defendant would need to continue operating under bridge contracts throughout the appeal—which could take months or years—and must deal with the inefficiencies inherent in having two contracts instead of one. *Id.* These bridge contracts are non-competitive and NASA Ames estimates that it has already paid $600,000 in excess costs since Plaintiff began its protests. *Id.* at 9. Defendant alleges that over the past year the cost of administrating the AEMMS and ESTRAD contracts was about $121,000 per month more than what it would have paid if AMA had begun performance on the ASSESS contract. *Id.*

"Injunctive relief pending appeal is disfavored where it would force the Government to endure additional costs or financial and operational burdens, such as resorting to other, more expensive contracts than the contract award under protest." *Newimar*, 163 Fed. Cl. at 255. STC's alleged irreparable injuries do not outweigh NASA's, especially given that Plaintiff is unlikely to succeed on the merits on appeal.

Plaintiff asks the Court to discount NASA Ames' harms because like STC, Defendant has not moved for expedited proceedings at the Federal Circuit. Pl.'s Reply at 7. While neither party moved for expedited consideration, this factor counts against Plaintiff. Defendant is under no obligation to continue to voluntarily delay performance. STC is the party that asks for a stay and injunction pending appeal, which is an extraordinary and unusual remedy. The moving party has the burden to convince the Court that, among other things, it suffers serious and tangible irreparable harm. *See Newimar*, 163 Fed. Cl. at 248. Defendant has shown that it will suffer harms from further delay, and those harms support the Court's decision to deny a stay and injunction pending appeal.

The Court must also consider Defendant-Intervenor's alleged harms. STC claims that AMA "will not be unduly harmed by the issuance of a stay or the granting of injunctive relief in favor of STC, [because] AMA also continues to perform its incumbent contract." Mot. at 8 (citing Pl.'s Mot. for J. on the Administrative R. at 3). AMA disagrees and proffers at least nine

harms it will suffer from delay in performance of the ASSESS contract. Def.-Intervenor's Resp. to Mot. to Stay Ct.'s Op. and Order, ECF No. 44 (hereinafter "Def.-Intervenor's Resp.") at 6–9.

It is true that AMA would continue to perform under the ESTRAD award if the Court granted STC's motion for an injunction. In that way, some of the harms it predicts—like employee retention issues—are similar to STC's alleged injuries. *See* Pl.'s Reply at 8. However, this does not negate the harms AMA presents. The delay in transitioning the contract for five months during the pendency of STC's protests is itself a harm. Def.-Intervenor's Resp. at 2. *See G4S Secure Integration*, 159 Fed. Cl. at 263 (identifying a delay of seven months for litigation as a cognizable harm to defendant and defendant-intervenor). Moreover, some of AMA's other harms—such as task reallocation that it contends could occur if the ASSESS award is delayed and harm to its ability to compete for future contracts with NASA—are cognizable injuries that weigh against injunctive relief.

### E. Public Interest

When the Government is the opposing party in a case, concerns over injury to the defendant, defendant-intervenor, and the public interest merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009). "[T]here is 'a substantial public interest in allowing the government to proceed with contracts awarded . . . to the contractor offering the best value.'" *Newimar,* 163 Fed. Cl. at 258. This is even more true when a court and the GAO have both already reviewed an agency's procurement decision. *ACI Techs.*, 163 Fed. Cl. at 51.

STC argues that granting a stay is in the public interest "because the subject procurement, which is valued at approximately *$100 million*, has been tainted by arbitrary and unfair government action." Mot. at 8. "Plaintiff's argument that the public interest would be served by an injunction rest[s] solely upon its claim that the contract was improperly awarded. But the contract award was found to be lawful, and thus the public interest would not be furthered by an injunction." *Telos Corp.*, 129 Fed. Cl. at 579 (citations omitted). As explained in the Court's Opinion, the Administrative Record supports the finding that NASA did not act unreasonably during the ASSESS procurement and AMA's proposal offered the best value to the government. *Sci. & Tech. Corp.*, 2025 WL 28352, at *17. Thus, proceeding with the implementation of the ASSESS contract is in the public interest.

### III. Conclusion

In sum, Plaintiff has failed to show that the balance of interests weighs in favor of granting a stay or an injunction pending appeal. STC "fails to raise any issue or question so novel or close as to warrant the extraordinary remedy of injunctive relief pending appeal." *Newimar*, 163 Fed. Cl. at 249. STC is unlikely to succeed on the merits, and while it may suffer some harm as a disfavored incumbent, the harm to NASA Ames, AMA, and the public all decidedly tilt against Plaintiff.

For the reasons above, STC's Motion for Stay and Injunction Pending Appeal, ECF No. 40, is **DENIED**.

Some information contained in this Order may be considered protected information subject to the Protective Order entered on September 16, 2024. On or before **February 11, 2025**, the parties **SHALL CONFER** and **FILE** a joint status report that identifies the

information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions from this Order.

**IT IS SO ORDERED.**

                                            <u>s/ Carolyn N. Lerner</u>
                                            CAROLYN N. LERNER
                                            Judge